IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STELLA ADAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 3:06-cv-000743-WKW-WC |
| | ) | |
| H. HARRY SMITH, *et al.*, | ) | (WO) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court for consideration of the Plaintiff's Motion to Remand. (Doc. # 3-1.) After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that it lacks subject matter jurisdiction in this case. Accordingly, Plaintiff's Motion to Remand is due to be GRANTED.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 20, 2006, plaintiff Stella Adams ("Plaintiff"), a citizen of Alabama, filed an action in Circuit Court of Macon County, Alabama, seeking an unspecified amount of damages. (Doc. # 1-2, Not. of Removal, Ex. A.) In her Complaint, Plaintiff alleges that on March 12, 1987, defendant H. Harry Smith ("Smith"), a citizen of Alabama and an agent of Life Insurance Company of Georgia ("Life of Georgia"),[1] met with her and executed a contract to secure an insurance policy from Life of Georgia on the life of Plaintiff. (*Id.* at ¶ 8.) Smith also represented to Plaintiff that the policy would contain a Children's Term Benefit rider covering the lives of Plaintiff's three children until

---

[1] Jackson National Life Insurance Company ("Jackson National") is apparently the successor to Life Insurance Company of Georgia as a result of merger. (Doc. # 1-1, Not. of Removal at 1.) Jackson National is a Michigan corporation with its principal place of business in Lansing, Michigan. (*Id.* at 2.) Life of Georgia was a Georgia corporation doing business in Macon County, Alabama. (Doc. # 1-2, Not. of Removal, Ex. A at ¶ 3.)

March 12, 2008.  (*Id.* at ¶ 9.)

Subsequently, Life of Georgia issued a Level Premium Life Policy (the "Policy") on March 12, 1987,[2] to Plaintiff.  (Doc # 1-5, Not. of Removal, Ex. D at 4.)  The Policy includes Form 3940-82, a "Children's Term Benefit,"[3] payable for 21 years at $2.45 per month.  (*See id.* at 4, 13.)  The Policy states that the Children's Term Benefit takes effect on the issue date and ends upon the "Children's Term Expiry Date,"[4] which is "the Policy Anniversary on or first following the Insured's 60th  birthday or, if earlier, the date the Premium Period of this policy ends."[5]   (*Id.* at 13.)  Inexplicably, the parties have submitted different Form 3049-81 policy schedules, each appearing to be authentic.  The "Policy Schedule" included with the Policy in Defendants' Notice of Removal does not indicate the Children's Term Expiry Date, only that the premium period on the Children's Term Benefit is 21 years, which calculates to March 12, 2008.  (*Id.* at 3.)  The "Policy Schedule" submitted with Plaintiff's Motion to Remand specifies the Children's Term Expiry Date as March 12, 2008, which is 21 years from the policy issue date.  (Doc. # 3-3, Mot. to Remand, Ex. B.)  In addition, Form 3940-82 explicitly provides that "[e]ach Insured Child's coverage ends upon his or her 22nd birthday."  (*Id.*)

---

[2] While the Complaint specifies that Smith and Plaintiff executed the application on March 12, 1987 (*see* Doc. # 1-2, Not. of Removal, Ex. A), it appears that they actually executed the application on March 2, 1987  (Doc # 1-5, Not. of Removal, Ex. D at 21).  The resulting life insurance policy was then issued by Life of Georgia on March 12, 1987. (*Id.* at 4.)

[3] The Children's Term Benefit provided a five thousand dollar payout to the beneficiary of the Policy upon the death of each of Plaintiff's three children.  (*See* Doc. # 3-3, Mot. to Remand, Ex. B; Doc. # 1-5, Not. of Removal, Ex. D at 13.)

[4] Form 3940-82 actually provides four possible termination points.  (*See* Doc. # 1-5, Not. of Removal, Ex. D at 13.)  Coverage expires upon the earlier of: "1. the Children's Term Expiry Date; 2. automatic exchange for paid-up policies following the death of the Insured; 3. the date a Guaranteed Value Option takes effect; 4. Our receiving Your written request to end this Benefit."  (*Id.*)  Only the first expiration date is at issue.

[5] The Policy Anniversary is March 12.  (Doc. # 1-5, Not. of Removal, Ex. D at 6.)

In March of 1987, Plaintiff began paying premiums on the Policy and continued paying until after the Complaint was filed in 2006. (*See* Doc. # 3-5, Mot. to Remand, Ex. D.) On December 12, 1997, Plaintiff's youngest son turned twenty-two, (Doc. # 1-2, Not. of Removal, Ex. A at ¶ 13), and on May 28, 2005, Plaintiff's youngest son died as a result of a motor vehicle accident (*Id.* at ¶ 11). Plaintiff sought and was denied benefits for her deceased son. (Doc. # 1-2, Not. of Removal, Ex. A at ¶ 12.) According to Plaintiff, she realized at that point the facts underlying the fraud claims. (Doc. # 3-1, Mot. to Remand at 7; *see also id.*, Ex. A at 7, 9.)[6]

On June 20, 2006, Plaintiff filed her Complaint in the Circuit Court of Macon County, Alabama, against Smith, Life of Georgia, and nine fictitious defendants ("Defendants"). (Doc. # 3-1, Mot. to Remand, Ex. A at 1.) Specifically, Plaintiff charges Smith with fraudulent suppression (Count I), willful misrepresentation (Count II), civil conspiracy (Count III),[7] and conversion (Count VII). (*See id.* at ¶¶ 15-31, 45-49.) The fraud and conspiracy to defraud claims arise from Smith's statements regarding Form 3940-82, and the conversion and conspiracy to convert claims arise from Smith's alleged acceptance of premium payments. (*See id.*)

Defendants filed a Notice of Removal on August 17, 2006, asserting the requisite amount in controversy and complete diversity, despite Smith being named as a party to the lawsuit. (Doc. # 1-1, Not. of Removal.) Defendants allege that Smith was fraudulently joined to avoid federal

---

[6] Attached to Defendants' Brief Opposing Remand (Doc. # 6-1) is Exhibit A (Doc. # 6-2), a copy of a state court complaint filed by J.C. Adams and Stella Adams against Life Insurance Company of Georgia and Harry H. Smith, Jr., on October 16, 1997. In paragraphs 13 and 35 of that 1997 complaint, reference is made to the rider providing insurance coverage on the children of plaintiff. Defendants did not specifically reference this prior action in their Notice of Removal, and offer minimal explanation of its significance and outcome in their brief. Plaintiff does not mention it.

[7] The Complaint specifically alleges a "conspiracy to fraudulently convert the good and valuable premiums paid by the Plaintiff." (Doc. # 1-2, Not. of Removal, Ex. A at 7.) For purposes of this order, this count will be treated as a claim for conspiracy to defraud and a separate conspiracy to convert.

jurisdiction because the claims against Smith are barred by statutes of limitations. (*Id.*) Plaintiff moved to remand on September 7, 2006, arguing that she has stated colorable claims against Smith. (Doc. # 3, Mot. to Remand.) Defendants filed a response on September 29, 2006, generally arguing that Plaintiff filed a similar suit in state court in 1997 based on the same transaction which negates Plaintiff's assertion that she discovered the fraud in 2005. (Doc. # 6-1, Brief Opposing Remand.)

## II. STANDARD OF REVIEW

A defendant may remove to federal court a case filed in state court where the federal court has original jurisdiction. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing 28 U.S.C. § 1441(a) (2000)). The federal courts are those of limited original jurisdiction and only have the power to hear cases that they have been authorized to hear by the Constitution and Congress of the United States. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, Congress has provided that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a) (2000). Such diversity jurisdiction requires complete diversity between each and every plaintiff and defendant. *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). Furthermore, no defendant in a case sought to be removed may be a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b).

The federal removal statutes must be narrowly construed against removal, and, generally speaking, all doubts about removal must be resolved in favor of remand. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th

Cir.1996)).  Upon a motion to remand, the removing party bears the burden of establishing jurisdiction.  *Diaz*, 85 F.3d at 1505 (citing *Tapscott*, 77 F.3d at 1356).  The parties do not dispute jurisdiction based on the amount in controversy; therefore, the threshold issue before this court is whether complete diversity exists between the parties.

### III. DISCUSSION

Where, on the face of its pleadings, a case lacks complete diversity, the "action may nevertheless be removable if the joinder of the non-diverse party . . . were fraudulent." *Triggs*,154 F.3d at 1287.  In examining a claim of fraudulent joinder, the court looks at the plaintiff's pleadings "at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez*, 139 F.3d at 1380.  All questions of fact are resolved in favor of the plaintiff. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (quoting *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

The Eleventh Circuit has delineated two situations that constitute fraudulent joinder: (1) the plaintiff has no possibility of proving a cause of action against the defendant, or (2) the plaintiff's pleadings contain outright fraud in the jurisdictional facts. *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)); *see also Triggs*, 154 F.3d at 1287; *Pacheco de Perez*, 139 F.3d at 1380.  The defendant bears the burden of proof and, to prevail, must show fraudulent joinder by clear and convincing evidence. *Henderson*, 454 F.3d at 1281 (citing *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)).[8]

In this case, Defendants allege the first variety of fraudulent joinder: that there is no

---

[8] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981).

possibility Plaintiff can prove a cause of action against Smith. (Doc. # 1-1, Not. of Removal at 6.) "The burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez*, 139 F.3d at 1380 (citing *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1562); *see also Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."). Furthermore, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548-49 (5th Cir. 1981)).[9] But at the same time, the possibility of liability on the part of the allegedly fraudulently joined defendant "must be reasonable, not merely hypothetical." *Legg*, 428 F.3d at 1325 n.5.

A.    *Plaintiff's Claims*

Plaintiff's claims against Smith arise out of his insurance sales activities in 1987 and his

---

[9]    In terms of this circuit's laws, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, *the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.* For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then *resolving all contested issues of fact in favor of the plaintiff*, there need only be a reasonable basis for predicting that the state law might impose liability on the facts involved . . . . Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them. In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Id.* at 1541-42 (internal quotations and citations omitted) (emphasis added).

6

alleged receipt of premiums thereafter. Defendants argue that the statutes of limitations have run on every claim against Smith. The court will address separately the application of the statutes of limitations to Plaintiff's fraud and conversion claims. The court will also address the validity of Plaintiff's underlying claims against Smith.

    *1.    Fraud*

        *a.    Statute of Limitations*

Actions for fraudulent suppression, fraudulent misrepresentation, and conspiracy to defraud are subject to a two-year statute of limitations. *See* Ala. Code § 6-2-38(*l*) (2005); *Kelly v. Alexander*, 554 So. 2d 343, 344 (Ala. 1989), *overruled on other grounds*, *Ford Motor Co. v. Neese*, 572 So. 2d 1255 (Ala. 1990) ("Because the conspiracy to defraud claim is dependent upon the underlying fraud, the statute of limitations on that claim began to run at the same time as did the statute for the underlying fraud claim."). However, Alabama's tolling statute, Ala. Code § 6-2-3 (2005), provides that fraud actions do not accrue "until the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud." *Potter v. First Real Estate Co.*, 844 So. 2d 540, 545 (Ala. 2002) (citing *Ex parte Seabol*, 782 So. 2d 212, 216 (Ala. 2000); *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997); *Moulder v. Chambers*, 390 So. 2d 1044, 1046 (Ala. 1980)).

The question of whether a plaintiff discovered or reasonably should have discovered the fraud is generally a question for the trier of fact. *Whitlock v. Jackson Nat'l Life Ins. Co.*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998) (citing *Liberty Nat'l Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1297 (Ala. 1995)). An exception to this rule exists in the "reasonable reliance" standard, by which

    the trial court can enter a judgment as a matter of law in a fraud case where the

> undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.

*Foremost*, 693 So. 2d at 421. This standard allows consideration of the facts and circumstances surrounding the transaction, "including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Id.* A look at several Alabama state court cases analyzing the "reasonable reliance" standard proves helpful.

In *Foremost*, the Alabama Supreme Court replaced the "justifiable reliance" standard with the older, more flexible "reasonable reliance" standard. *Id.* (overruling *Hicks v. Global Life & Accident Ins. Co.*, 584 So. 2d 458 (Ala. 1991), and *Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989)). In this case, two plaintiffs bought mobile homes from the defendant, which also sold them insurance policies on the homes. At the time of purchase, the defendant's agent told the plaintiffs that their premiums for the first year of coverage would be waived. The agent also failed to give the plaintiffs the option to cancel or withdraw from the included adjacent structures coverage. The plaintiffs then signed multiple purchase documents clearly stating that first-year premiums were included in the purchase cost and that adjacent structures coverage was part of the insurance policy. While finding the plaintiffs' claims barred by the statute of limitations under the "justifiable reliance" standard, the court noted that it would have also found the claims barred under the "reasonable reliance" standard. *Id.* at 422. Because both plaintiffs were literate, had a high school or equivalent education, and held steady jobs, the court would have found their failure to read the documents they signed or received at the time of closing or shortly thereafter unreasonable. *Id.*

In *Seabol*, the Alabama Supreme Court held that the plaintiff reasonably relied on representations by the defendant, despite the plaintiff having possession of all pertinent documents

and his sophisticated knowledge of real estate transactions, because the documents were "not as easily understood" as the those in *Foremost*. 782 So. 2d at 216-17. At issue were a promissory note and a mortgage. The mortgage secured a prior loan and had no provision for securing future advances. The promissory note expressly indicated that it was secured by the mortgage. The court held that "it would be difficult for [the plaintiff] to deduce, simply by reading the mortgage and the promissory note, that the mortgage" did not secure the promissory note. *Id.* at 217.

In *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, the Alabama Supreme Court held that "a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract. 776 So. 2d 777, 784 (Ala. 2000) (citing *Ex parte Caver*, 742 So. 2d 168, 173 (Ala. 1999)). In upholding an arbitration agreement, the court found there was no evidence that the plaintiffs were illiterate, that the salesman prevented them from reading the documents, or that they could not understand the documents. *Id.* Based on that evidence, the court held the plaintiffs' reliance on the salesman's oral representations about the agreement was unreasonable. *Id.*

Defendants argue that the Policy language in this case is clear and unambiguous, and therefore Plaintiff's claims of fraud against Smith accrued in March of 1987 when she received the documents. (*See* Doc. # 1-1, Not. of Removal at 7.) The court disagrees. The determination of whether a contract term is ambiguous is a question of law. *Am. Res. Ins. Co. v. H & H Stephens Constr., Inc.*, 939 So. 2d 868, 873 (Ala. 2006).[10] The court finds that the conflicting language of

---

[10] The Alabama Supreme Court explained the determination of contract ambiguity in detail:

If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court. The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. This means that the terms of an insurance policy should be given a rational and practical

Form 3940-82 contained in the Policy is ambiguous. Form 3940-82 specifically states that coverage will end upon the Children's Term Expiry Date, referencing page 3 of the Policy (Form 3049-81), which in Plaintiff's version specifies March 12, 2008, as the expiry date, and under Defendants' version, specifies 21 years from the policy issuance date, which is also March 12, 2008. Form 3940-82 also gives a conflicting termination date, which is each child's twenty-second birthday. Plaintiff's youngest child reached the age of twenty-two in 1997, over ten years before the stated Children's Term Expiry Date of March 12, 2008. Form 3940-82 does not indicate whether the Children's Term Expiry Date is subordinate to termination of coverage upon each child turning twenty-two, so the terms are manifestly ambiguous.

There is no evidence at issue indicating Plaintiff was illiterate, that any defendant prevented Plaintiff from reading the Policy, or that Plaintiff did not have possession of the Policy. *See, e.g.*, *Foremost*, 693 So. 2d 409; *Seabol*, 782 So. 2d 212; *Early*, 776 So. 2d 777. Furthermore, Plaintiff admits that she did not read the Policy. But unlike *Foremost* and *Early*, where the plaintiffs acted unreasonably in failing to read their unambiguous policies, the Policy at issue is not clear and unambiguous, and a reading of it by a layperson would not yield a clear understanding of when the Children's Term Benefit would expire.

Accordingly, the court cannot rule as a matter of law that Plaintiff did not reasonably rely on the representations of Smith as to the content of the ambiguous Policy. *Compare Foremost*, 693 So. 2d at 422 (finding unreasonable reliance where clear and unambiguous documents in hands of

---

construction. Also, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole.

*Am. Res. Ins. Co.*, 939 So. 2d at 873 (internal citations and quotations omitted).

literate plaintiffs), *and Early* (same), 776 So. 2d at 784, *with Seabol,* 782 So. 2d at 217 (finding reasonable reliance where ambiguous documents in hands of sophisticated plaintiff). This court also cannot say that, as a matter of law, Plaintiff should reasonably have discovered the facts underlying her fraud claims in March of 1987. *See Potter*, 844 So. 2d at 545 (holding that statute of limitations tolled until plaintiff knew or reasonably should have discovered the facts underlying the fraud claim). Finally, the conflicting dates given by Plaintiff (2005) and Defendants (1987 or 1997) as to when Plaintiff had actual knowledge of the facts underlying the fraud gives rise to a factual question best left to a jury. *See Legg*, 428 F.3d at 1323. Thus, there remains an arguable question of fact whether the statute of limitations is tolled.

        b.       *Substantive Fraud Claims*

While Plaintiff's claims are not barred by the statute of limitations for purposes of the Motion to Remand under consideration here, and the parties did not raise issues as to the validity of the substantive claims, this court is mindful that it should not remand cases whose claims are "merely theoretical." *See Legg*, 428 F.3d at 1325 n.5. To succeed on a claim of fraudulent misrepresentation, Plaintiff must show proof "(1) of a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *Harrington v. Johnston-Rast & Hays Co.*, 577 So. 2d 437, 439 (Ala. 1991) (citing *Hammond v. City of Gadsden*, 493 So. 2d 1374, 1377 (Ala. 1986)).

Construing the pleadings and available evidence in Plaintiff's favor, she has sufficiently alleged an arguable claim of fraudulent misrepresentation against Smith. First, Plaintiff alleges that Smith misrepresented the expiration date of the Children's Term Benefits. Second, Plaintiff alleges

11

that she paid good and valuable consideration for the benefits provided by Form 3940-82, as they were presented to her by Smith, thus making the expiration date a material fact. *See Bank of Red Bay v. King*, 482 So. 2d 274, 282 (Ala. 1985) (citing *Crigler v. Salac*, 438 So. 2d 1375 (Ala. 1983)) ("A 'material fact,' within the meaning of the Alabama fraud statutes, is a fact of such a nature as to induce action on the part of the complaining party."). Plaintiff also sufficiently alleges that she reasonably relied on Smith's representations directly to her detriment, *i.e.*, she was deprived of premiums. *See U.S. v. Burgreen*, 591 F.2d 291, 297 (5th Cir. 1979) ("Essential to a claim of fraud is a material misrepresentation of fact which has lead [sic] another to act to his detriment.").[11] With, at best, disputed evidence presented by Defendants in opposition to her fraud claims, this court finds that Plaintiff has a colorable cause of action against Smith for fraudulent misrepresentation. *See Triggs*, 154 F.3d at 1287 (requiring only a possibility of a claim, not certainty that the claim will succeed). This finding alone compels remand to the state court.

   2.   *Conversion*

An action for conversion is subject to a six-year statute of limitations. Ala. Code § 6-2-34(3) (2005). Defendants submitted the affidavit of Smith, which states that Smith retired from Life of Georgia in 1987, has had no contact with Plaintiff since March of 1987, and has not collected any premiums from Plaintiff since March of 1987. (Doc. # 1-6, Not. of Removal, Ex. E at ¶¶ 6-8.) This affidavit merely illustrates a question of fact as to when and to what extent Smith received

---

[11] Life of Georgia continued to collect premiums from Plaintiff for the children's coverage long after the youngest attained the age of twenty-two, a fact that is consistent with the alleged representations of Smith and that would tend to support Plaintiff's claim of reasonable reliance. Smith testifies in his affidavit that he has not "collected" premiums from Plaintiff since 1987. This is not the same as saying he has not *received* prorated premium residuals or other financial benefits from the sale of the Policy to Plaintiff.

premiums, and so this court must resolve the issue in the light most favorable to Plaintiff.[12] Accordingly, this court finds that Defendants have not adequately shown that Plaintiff's conversion claim is barred by the statute of limitations.

*B.     Res Judicata*

In an unsupported footnote of their response brief, Defendants raise, but do not rely upon, the issue of claim preclusion, or *res judicata*, regarding Plaintiff's claims against Smith. In Alabama, *res judicata* has four elements:

> (1) the question or fact must have been litigated and determined by a court of competent jurisdiction; (2) the final judgment must have been rendered on the merits; (3) the parties, or those in privity with them, must be of such a relationship to the parties in the subsequent action as to entitle them to the benefits and/or burdens of the prior litigation; and (4) the same cause of action must be involved in both lawsuits.

*Hughes v. Martin*, 533 So. 2d 188, 190 (Ala. 1988) (citing *Stevenson v. Int'l Paper Co.*, 516 F.2d 103 (5th Cir. 1975)). This court is unable to determine from review of a state court complaint and an unauthenticated Internet docket sheet whether the case has been fully litigated to the point of final judgment. While this evidence raises an issue of when Plaintiff knew of the termination of benefits for her children, that is an issue of fact yet to be resolved. Accordingly, Defendants have not shown by a preponderance of the evidence that Plaintiff's claims against Smith are barred by *res judicata*.

## IV. CONCLUSION

Having considered Defendants' arguments in opposition to remand, the court finds that they do not meet their heavy burden of showing by clear and convincing evidence that Plaintiff has no

---

[12] *See* note 10, *supra*.

possibility of a claim against Smith, nor have Defendants shown that Plaintiff's claims are barred by *res judicata*. Therefore, for the reasons discussed above, it is hereby ORDERED that:

1. Plaintiff's Motion to Remand (Doc. # 3-1) is GRANTED;

2. Pursuant to 28 U.S.C. § 1447(c), this case is REMANDED to the Circuit Court of Macon County, Alabama; and

3. The Clerk of the Court is DIRECTED to take the necessary steps to effectuate the remand of this case to the Circuit Court of Macon County, Alabama.

DONE this the 22nd day of December, 2006.

      /s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE